**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

LEONARD SULAYMANOV and JLZ    :
CONSULTING, INC. d/b/a         :
LENZO & CO,                    :
                              :
              Plaintiffs,      :    **CASE NO.: 24-CV-23229**
v.                             :
                              :
FLOYD MAYWEATHER JR.,          :
MICHAEL RAY STEVENSON          :
(a.k.a TYGA) and THE MONEY     :
TEAM LLC,                      :
                              :
              Defendants.      :

## COMPLAINT

AND NOW, the above-named Plaintiffs, Leonard Sulaymanov ("Sulaymanov") and JLZ Consulting, Inc. d/b/a Lenzo Co ("JLZ") (collectively, "Plaintiffs"), by and through their undersigned counsel, initiate this complaint against the Defendants, Floyd Mayweather Jr. ("Mayweather"), Michael Ray Stevenson a.k.a TYGA ("Tyga"), and The Money Team LLC ("TMT" or "The Money Team") (collectively, "Defendants"), and in support thereof aver as follows:

## INTRODUCTION

1. Defendants are a group of individuals and celebrities who, in essence, live lavish lifestyles, purchasing all sorts of extravagant and luxurious personal items for themselves, their family, friends and even bodyguards such as watches, necklaces, and rings.

2. These Defendants individually, jointly, severally and/or in concert with each other solicited Plaintiffs to meet with them privately and present to

them such luxury items for sale upon promises that the Defendants would purchase selected items from Plaintiffs.

3.     All of the scheduling of meetings and discussion of the financial matters for this relationship were handled, processed and set up by and through Jona Rechnitz, who claimed himself to be the agent, broker and friend of Defendants.

4.     Defendants controlled all aspects of the transactions from selecting the meeting locations, to their choice of watch brands to be displayed, the types of jewelry they wanted to see, the deposit terms for items purchased, the delivery locations of the luxury items and finally to invoicing and payment of all balances due.

5.     This action arises out of a pattern of predatory, unfair, improper, fraudulent and unscrupulous practices through which Defendants used Plaintiffs' reputation, business and its inventory to systematically steal and convert Plaintiffs' watches and jewelry to their own, without paying the full and fair price for same all to Plaintiffs' extreme financial loss.

6.     Defendants mislead, deceived, defrauded and misrepresented their true intentions and relationships with each other to induce Plaintiffs to deliver and display millions of dollars of inventory that Plaintiff had for sale, all outside the purview of cameras, security systems and traditional store sale methods.

7.     Defendants then mislead, coerced and defrauded Plaintiffs into accepting fractional cash deposits toward the full purchase price for the luxury items the Defendants selected and purchased.

8. Defendants have engaged in illegal, improper, fraudulent and/or racketeering and other activities which include but are not limited to:

- Targeting high-end jewelers and watch brokers who work with high-net-worth celebrities and sports athletes and offer financial terms on purchases;

- Misrepresenting to Plaintiffs the terms and conditions of sales;

- Misrepresenting to Plaintiffs who was in charge of the funds for the purchases;

- Misrepresenting to Plaintiffs that they all paid Jona Rechnitz the total invoiced amounts due for the luxury items the individually possessed;

- Misrepresenting that they did not accept/take possession of certain luxury items, all while posting on social media accounts wearing Plaintiffs' inventory/items;

9. Plaintiffs bring this action under various Federal and State laws to obtain temporary, preliminary and/or permanent injunctive relief, writs or replevin, disgorgement of ill-gotten luxury items, unjust enrichment and other equitable relief for Defendants' acts and practices hereinafter described in greater detail.

10. Alternatively, in the event equitable relief is unattainable, then Plaintiffs seek compensatory and punitive damages for Defendants' breach of contract, fraud, theft and conversion.

## THE PARTIES TO THIS ACTION

11. Plaintiff, Leonard Sulaymanov (hereafter, "Sulaymanov"), is a resident of Florida and operates a high-end watch and jewelry business at 169 E. Flagler Street, Suite 1012, Miami, Florida 33131.

12. Plaintiff, JLZ Consulting, Inc., is a duly organized and registered corporation, doing business as "Lenzo & Co" with a business address located at 169 E. Flager St, Suite 1012, Miami, Florida 33131 (hereafter, "JLZ"). Sulaymanov is the owner and managing member of JLZ. Plaintiffs are hereinafter collectively referred to as "Plaintiffs".

13. Defendant, Floyd Mayweather Jr. (hereinafter, "Mayweather"), is a world champion boxer, celebrity and social media influencer who owns real property located at 288 S. Coconut Lane, Miami Beach, Florida 33139. Mayweather has at all times material hereto, acted alone or in concert with other named Defendants to solicit Plaintiffs for inventory, to select luxury items from Plaintiffs and to convert said items as his own personal possessions without compensating Plaintiffs.

14. Defendant, The Money Team LLC (hereinafter, TMT), is a corporate entity created by Mayweather, which employs Mayweather's staff of bodyguards, agents, servants, and workmen.

15. Defendant, Michael Ray Stevenson a.k.a Tyga (hereinafter, "Tyga"), is a world-renowned musical artist commonly known as 'TYGA", with an address located at 801 S. Figueroa St, Suite 1000, Los Angeles, CA 90017, and he hired, employed, engaged, and/or contracted with Jona Rechnitz to solicit Plaintiffs and to acquire certain luxury items from Plaintiffs all as part of Defendants' fraudulent scheme.

## JURISDICTION AND VENUE

16.     Plaintiffs bring this civil action against Defendants, individually, jointly, severally and in the alternative for crimes under the Racketeer Influenced and Corrupt Organization Act, as codified in 18 USC§1962 *et seq*, and various State actions including civil theft, fraud, breach of contract, conversion and collection upon a book account.

17.     This Court has original jurisdiction over this matter under the U.S. Constitution and the laws of the United States pursuant to 28 U.S.C. §1331.

18.     This Court has pendent jurisdiction over Plaintiffs' state law claims pursuant to 28 USC § 1367.

19.     The amount in controversy exceeds the sum of $4,000,000.00.

20.     Venue in this District is proper under 28 U.S.C. §1391 (b)(2) in that Plaintiffs and Defendants transacted business within Miami-Dade County, Florida.   Furthermore, the unlawful acts and practices of Defendants were committed by, and/or upon the direction, and with the knowledge of Defendants within the State of Florida and more specifically the City of Miami.

21.     Plaintiffs complied with any and all the jurisdictional prerequisites and the amount in controversy exceeds all jurisdictional limits exclusive of interest and costs.

## FACTS PERTIENT TO ALL COUNTS OF THE COMPLAINT

22.     In or around June 28, 2021, Dan Roden, an individual jeweler, contacted Plaintiffs about attending a meeting with himself, Moshe Rivs and Jona Rechnitz to make an introduction so that Jona Rechnitz ("Rechnitz") could

discuss the purchase of luxury watches and jewelry from Plaintiffs for some of his alleged clients.

23.    At that time, Rechnitz stated that he was soliciting high-end watches and diamond jewelry specifically on behalf of Defendants Mayweather and TMT.

24.    Rechnitz represented himself as the exclusive agent, consultant and buyer of luxury items for Defendants Mayweather and TMT.

25.    Sulaymanov met with Rechnitz that evening for dinner, at which time Sulaymanov showcased a Richard Mile 29 with factory diamonds and Richard Mille 10 Lemans Classic to Rechnitz to highlight some of Plaintiffs' more extravagant inventory.

26.    After the dinner meeting Rechnitz requested Sulaymanov go back to their office and gather more high-end watch inventory and bring it to Mayweather's hotel room at the Fontainebleau in Miami Beach.

27.    Rechnitz stated Mayweather was in a "shopping mood" and so Sulaymanov should bring a variety of luxury watches to showcase.

28.    During the late hours of June 28, 2021, and into the early morning hours of June 29, 2021, Sulaymanov attended the Fontainebleau meeting with Rechnitz, Mayweather and members of TMT.

29.    Sulaymanov arrived at the hotel carrying a secure case containing Richard Mille (hereinafter "RM"), Patek Philippe (hereinafter "Patek"), Rolex, and Audemars Piguet (hereinafter "AP") watches and were taken up to Mayweather's suite.

30.     Upon entering the suite, Sulaymanov was met by Mayweather and his bodyguards.[1] The bodyguards instructed Sulaymanov to surrender his cell phone to them because they said no photos, calls or texts are allowed while in the presence of Mayweather.

31.     After inspecting the merchandise in the hotel suite, Defendants asked Sulaymanov to meet them at his office later that morning (June 29, 2021) so they could inspect and select even more merchandise in order for Plaintiffs to make a "grand presentation" to Mayweather that evening back at his hotel suite.

32.     On June 29, 2021, Rechnitz brought members of TMT to Plaintiffs' office, and acting on behalf of Mayweather, they selected items they believed Mayweather would purchase that evening.  Plaintiffs captured Rechnitz and TMT members selecting all the items for the "grand presentation" to Mayweather later that evening.



---

[1] Plaintiffs will discuss in greater detail the role of the bodyguards in Defendants' scheme later in the complaint.

32.    On the evening of June 29, 2021, Sulaymanov returned to the Fontainebleau with all the merchandise that had been selected by Mayweather and TMT over the past 24 hours. Unbeknown to Mayweather and TMT, Sulaymanov carried two (2) cell phones with him this time for security and insurance purposes so he could document the inventory in his possession and any business transactions that occurred.[2] Sulaymanov was able to capture the meeting, the attendees and Plaintiffs' inventory as follows:





---

[2] At the first meeting the evening before, the bodyguards took Sulaymanov's phone to prevent any photos or video recordings of his meeting with Mayweather and Rechnitz.

33. On that evening Rechnitz selected for Mayweather a Rolex Presidential date, in rose gold with a black dial and ruby begets for an agreed-upon purchase price of $75,000. Mayweather and TMT also selected a series of additional watches.

34. To confirm/secure the purchases of the watches, Rechnitz was instructed by Mayweather to pull out stacks of cash from Mayweather's satchel bags to pay Plaintiffs an "initial down payment." Specifically, Rechnitz gave Sulaymanov $90,000 in cash from Mayweather and TMT, as confirmed in the following photographs:



35. On June 30, 2024, Rechnitz and two of Mayweather's security guards arrived at Plaintiffs' office to pick up the Rolex Presidential and the merchandise that Mayweather and TMT purchased the night before. Once again, TMT demanded that Plaintiffs surrender all cell phones and turn off any video cameras, however, Plaintiffs documented the sales meeting and transaction as follows:



36.    At that time, Mayweather and TMT purchased and took physical possession of a Patek Philip 5980/1R watch; an RM 35–02 red NT Petey watch; an AP 37 yellow gold watch; an RM 35–02 black watch; one diamond ring and one diamond necklace. Plaintiffs provided all the boxes and warranty paperwork to Mayweather and TMT for their purchases as evidenced in the photographs above.

37.    On the evening of June 30, 2024, Sulaymanov again presented to the Fontainebleau prior to Mayweather and TMT's departure to Las Vegas, at which time Plaintiffs were paid an additional $177,000 in cash. This was a second "down payment" towards the overall purchase price of the items taken by Mayweather and TMT.

38.    Mayweather was wearing the diamond necklace and diamond ring riding in his TMT van departing from Miami and more recently, Mayweather posted a photograph wearing the necklace with his agent, Jona Rechnitz.



39.     The agreed upon price for all the luxury items acquired by Mayweather and TMT was $4,151,157.00. See Invoices attached hereto as **Exhibit A**. Several text messages between Sulaymanov and Jona Rechnitz, the agent for Mayweather and TMT, confirm these transactions, the prices, and repayment terms for the luxury items.

40.     Approximately two (2) weeks after the Mayweather and TMT purchases in Miami, Jona Rechnitz requested Sulaymanov travel to Las Vegas to meet with Mayweather and TMT again, as well as another client of Rechnitz's, Tyga.

41.     Sulaymanov traveled to Las Vegas at Defendants' request and brought ten (10) Rolex Presidential Anniversary watches, a Rolex Day-Date 40, as well as Richard Mille piece as requested by Defendants as confirmed in text messages from Rechnitz;



42.     While Sulaymanov was in Las Vegas, Tyga agreed to purchase from Plaintiffs the Rolex Day-Date 40 Eisenkiesel for the sum of seventy-nine thousand dollars ($79,000.00).

43.     At that time, Defendants did not make any payments to Plaintiffs on their account balance but did purchase more merchandise luring Plaintiffs into a false sense of security that they would have an ongoing business relationship that would benefit everyone involved.  However, as days passed and no wires were being received, Plaintiffs got concerned and started exchanging text messages with Defendants through their agent, Rechnitz, about when payment could be expected.

44.     In a series of text messages Rechnitz, acting as the agent for Defendants, confirmed that Defendants owed Plaintiffs one million eight hundred

and eighty-two thousand ($1,882,000.00) dollars for the watches that had been purchased and delivered.

 

45.     Despite Defendants written promise to wire four hundred thousand ($400,000) dollars in a period of approximately five (5) days with the "balance" being paid the "following week," Defendants made no payments to Plaintiffs.

46.     Defendants also owed Plaintiffs $2,001,657.00 for the diamond ring and necklace. See Exhibit A.

47.     Defendants have never paid the remaining balance on the purchases made and are indebted to the Plaintiffs for over three million eight hundred and eighty-three thousand six hundred and fifty-seven dollars ($3,883,657.00).

**DEFENDANTS' QUASI-CRIMINAL ENTERRPISE**

48.     Through investigation, publications and discussions with multiple lawyers throughout the country, Mayweather, TMT, and possibly others have systematically created, participated and engaged in what can be described as a

13

quasi-criminal, money laundering scheme involving high-end, rare and exclusive luxury watches and jewelry.

49.     The Defendants acting in concert and with other financially incentivized third parties, will purchase/acquire luxury watches by soliciting watch brokers, like Plaintiffs herein, and offering them upfront cash with payment terms in exchange for the purchase of watches and jewelry, with no intention of paying off the total balances.

50.     Defendants lure bona fide watch brokers and jewelers into their scheme with promises to not only buy timepieces and jewelry themselves, but to refer such brokers, like Plaintiffs, to their high-net worth friends, celebrities and professional athletes.

51.     Jona Rechnitz, acting as Defendants' agent, servant, and/or workman, helps effectuate Defendants' plan by traveling with Mayweather and TMT on their private jets, staying in luxury penthouse accommodations with them, driving their Bentleys and Rolls Royce cars, and through posting countless photos on social media sites (Instagram, TikTok, Facebook, Twitter) with Mayweather and TMT.

52.     Once Defendants have placed the proverbial "hook" into the unsuspecting watch or jewelry broker/dealer they begin a series of meetings and purchases to give the impression of a strong, lasting business relationship.

53.     Defendants then take possession of watches and jewelry, demanding formal paperwork, boxes and warranties, request repayment terms with upfront cash deposits, only to refuse to pay the full price for said items and in some

14

instances, claim they never "purchased" the item but rather it was "gifted" to them because of their fame and status.

54.    Lawsuits around the country have been filed in recent years against said Defendants for engaging in similar quasi-criminal conduct as alleged herein, to wit:

a. Over Anter, et al v. Jona Rechnitz, et al (LA County Super Court; 20STCV23877; filed 6/24/2020

b. Time Design, LLC v. Jona Rechnitz, et al (LA County Super Court; 20STCV27119; filed 7/20/2020

c. Victor Franco Noval v. Jona Rechnitz, et al (LA County Super Court; 20SMCV00216; filed 2/10/2020

d. Chronostore Luxxstyle, Inc v. Jona Rechnitz, (LA County Super Court; 21SMCV00339; filed 2/17/2021

e. Israel Sam Gorodistian v. Jadelle Jewelry and Diamonds LLC and Jona Rechnitz, et al (LA County Super Court; 20STCV07425; filed 2/20/2020

f. Yogi Securities Holdings, LLC v. Floyd Mayweather and Jona Rechnitz, et al (LA County Super Court; 22STCV03944; filed 2/01/2022

g. Pierre Ladow v. Jona Rechnitz (USDC; 2:20-cv-10059; filed 11/2/2020)

h. Eric & Co Trading Group, LLC v Floyd Mayweather, Jr.; U.S. District Court for the Southern District of Florida; 1:23-cv-20045-RKA (1/05/2023)

55.    Based upon Defendants' known and publicized legal issues and activities, Plaintiffs fear that the luxury items which were purchased by Defendants (who also took possession of same) may have been re-sold or pawned for cash in other parts of the United States and/or throughout the world with

the sale proceeds being retained by Defendants.  No additional money has ever been paid to Plaintiffs all to Plaintiffs' financial detriment.

56.    Defendants have acknowledged the debt which is owed to Plaintiffs for the merchandise Defendants acquired, but they have refused to pay and as such their statements and text messages were intentionally false and misleading and made with actual malice.

57.    Accordingly, all of Defendants' actions and statements were part of their scheme to deprive Plaintiffs of Plaintiffs' property and convert said property to Defendants' own uses with actual malice and criminal intent.

## COUNT I
## VIOLATIONS OF RICO

58.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

59.    Defendants have violated the Racketeer Influenced and Corrupt Organization Act, as codified in 18 USC§1962 *et seq*, in that Defendants conducted or participated, directly or indirectly, in the conduct of the enterprises' affairs through a pattern of racketeering activity, exercised significant control over and within the enterprise, and/or participated in the conduct of the enterprises' affairs resulting in injury to the Plaintiffs.

60.    Defendants and Plaintiffs are "persons" as defined in 18 USC§1961(3).

61.    Defendants, along with others, willfully combined, conspired and agreed to/for, an association in fact which constitutes an "enterprise" as defined

by 18 USC§1691(4) and said enterprise was and is engaged in, and its activities affect, interstate commerce.

62. Defendants knowingly devised and participated in a scheme whereby Defendants (1) deceived Plaintiffs about their financial stability and ability to pay for very rare, exclusive, high-end watches and jewelry; (2) made cash deposits on account of the full purchase price of said luxury items knowing they had no intention of paying anything further; (3) deceived Plaintiffs about payments being made and/or wire transfers forthcoming; (4) made willfully false statements that others (like Jona's father) would send wire transfers for the full balances owed; (5) converted the items to their own property and then liquidated the items on the secondary market for cash, far in excess of the initial deposit Defendants made; (6) effectively laundered money through the acquisition of watches and jewelry which they later sold for cash on secondary markets and deposited said cash into accounts or other vehicles (such as cryptocurrency) that cannot be easily tracked or located through conventional banking methods.

63. Defendants conspiracy and participation in securing these luxury items and paying some upfront cash deposits also had the effect of luring Plaintiffs into a false sense of security on the sale of additional luxury items locking Plaintiffs into the relationship because it would be almost impossible for Plaintiffs to simply recover the watches or jewelry from Defendants' wrist or neck and nearly impossible if not totally impossible for Plaintiffs to find out if Defendants have resold the items and thus converted watches and jewelry into cash for Defendants.

17

64.     Defendants devised and participated in this scheme with the intent to defraud Plaintiffs, enhance their own income and defraud subsequent watch and jewelry brokers and dealers.

65.     To implement their scheme, Defendants committed and/or caused a pattern of acts by way of, *inter alia*, making intentional misrepresentations, altering documents, confusing Plaintiffs, knowingly providing small sums of cash relative to the total purchase price designed to delay Plaintiffs while Defendants converted the items as their own personal property and then sold said items on secondary markets for cash.

66.     Defendants engaged in a pattern of racketeering activity by committing a pattern or acts of wire fraud, bank fraud, and/or money laundering in violation of 18 USC§1341 in the use of telephone for advancing, furthering or carrying out the scheme to defraud Plaintiffs.  Phone calls, text messages and WhatsApp messages to Plaintiffs were essential elements, or incident to essential elements of the unlawful racketeering scheme and these acts had the same or similar purpose, results, participants and scheme and were not isolated events.

67.     Defendants concealed the pattern of racketeering from Plaintiffs through their acts and omissions and the acts and omissions of their employees, servants, agents and independent contractors.

68.     There is a real and definite threat that this pattern of activity will continue in the future unless Defendants are enjoined by this Court, because numerous predicate acts continue to occur. Further, Plaintiffs are not the first victims of Defendants' pattern of racketeering activity and this conduct is

injurious to any and all people who deal with and sell luxury items (movable property) such as watches, jewelry and diamonds to this Enterprise.

69.     As a direct and proximate result of the acts alleged herein, Plaintiffs have suffered substantial economic injury and injury to their property.

## COUNT II
## FRAUD

70.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

71.     Plaintiffs were fraudulently induced into entering into the purchase agreements and transactions orchestrated by and entered into with Defendants.

72.     Defendants made numerous false and misleading representations to Plaintiffs as described in greater detail above including representations that Defendants would perform future acts that Defendants had no intention of performing, wiring funds that Defendant had no intention of wiring, having others pay Defendants' debts who never agreed to have such responsibility and concealing facts from Plaintiffs with the intent to deceive them.

73.     Defendants' representations created a duty to disclose facts material to the transactions as they deliberately represented that they were financially solvent to purchase the luxury items, they had national and international social and celebrity status making them famous, trustworthy and financially secure and that Plaintiff accepting payment of cash deposits and subsequent wire transfers was safe, secure, valid and legal, without any risk and would result in the eventual full payment for all luxury items acquired.

74.     Defendants' false representations and concealments were material to all aspects of the transactions including all financing/payment terms.

75.     Defendants knew at the time of the making of the representations that they were false, and that Defendants had no intention of paying the full price of all items acquired.

76.     Defendants, through their false representations and knowing concealments, intended to induce Plaintiffs to enter into the sales transactions by accepting initial cash deposits and offering the Defendants payment terms.

77.     Plaintiffs relied on the Defendants misrepresentations and concealments in entering into these transactions.

78.     As a direct and foreseeable consequence of entering into these transactions, Plaintiffs have suffered economic, consequential and emotional injuries.

<b><u>COUNT III</u><br><u>CONVERSION</u></b>

79.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

80.     Defendants knowingly and intentionally misrepresented to Plaintiffs that they would arrange for the payment of all luxury items purchased from Plaintiffs.

81.     Defendants by their representations were bound to disburse funds, make payments and deliver monies immediately upon their due date.

82.     Defendants instead retained all the luxury items (watches and diamond jewelry) without full payment to Plaintiffs.

83.     Defendants unlawfully, wrongfully and fraudulently exercised dominion and control over the property/inventory of Plaintiffs and Defendants failed and refused to pay the full price for same and have failed to comply with the payment terms.

84.     Defendants have refused to return the luxury items to Plaintiffs, and it is very likely that Defendants have unlawfully, wrongfully and fraudulently sold the luxury items on the secondary market for cash.

85.     Through Defendants' actions, Plaintiffs have been deprived of the beneficial use and fair market value of their property and have been caused to incur more substantial financial loss.

86.     Defendants have committed, among others, the common law tort of conversion.

**COUNT IV**
**CIVIL CONSPIRACY**

87.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

88.     More than one of the Defendants named herein acted maliciously to injure the Plaintiffs and others, without reasonable or lawful cause or excuse, resulting in harm to the Plaintiffs and others. The combined acts of the Defendants rise to a level of tortious nature.

89.     Defendants conspired to defraud Plaintiffs of inventory (luxury items) for the Defendants' own respective benefits and profits, with reckless disregard for the adverse effect of their actions upon Plaintiffs.

90.     As a result of the conspiracy, Plaintiffs have been damaged and are entitled to compensatory damages in an amount to be determined at trial together with punitive damages in excess of four million dollars ($4,000,000.00).

## REQUESTS FOR RELIEF FOR COUNTS I THRU IV

a.     Declaring the sale transactions for each subject luxury item null and void;

b.     Entering injunctive relief directing Defendants, specifically by returning all items to Plaintiffs and to take all affirmative steps necessary to remedy the effects of their conduct as alleged in this Complaint and to prevent any similar occurrences in the future;

c.     Enter a permanent injunction staying any sale, disposition, gifting, assigning or encumbering of Plaintiffs' items until a final adjudication of the merits of Plaintiffs' claims can be made;

d.     Compensatory damages in an amount that would fully compensate Plaintiffs for all economic losses resulting from Defendants' conduct;

e.     Compensatory damages for humiliation, embarrassment, physical and emotional distress and mental anguished caused by Defendants' violation of law as alleged in their Complaint;

f.     Treble damages pursuant to 18 USC §1964 and O.R.C 2923.34;

g.     Declaratory judgment finding the Defendants' actions violate 42 USC §3604, 3605 and 15 USC §1691(a)(1);

h.     Such damages and other relief so as to prevent unjust enrichment and compensate Plaintiffs for the injuries arising out of Defendants' violations of federal, state, and common law, including disgorgement of ill-gotten gains;

i.     Award of punitive damages that will punish Defendants for the willful, wanton and reckless conduct and would effectively deter Defendants from future acts of unlawful behavior;

j.     Award Plaintiffs reasonable attorney fees and court costs;

k.     Any other equitable relief deemed just by this Court.

## COUNT V
## Breach of Contract

91.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

92.    Defendants ordered and received certain goods and luxury items from Plaintiffs.  Said goods and luxury items were provided by Plaintiffs to Defendants from May, 2021 through the end of July, 2021, as evidenced by a certain book account and invoices attached hereto.

93.    To date, Defendants' overdue account balance with Plaintiffs exceeds three million eight hundred and eighty-three thousand six hundred and fifty-seven dollars ($3,883,657.00).

94.    Plaintiffs have made multiple demands for payment of the sum due and owing, however, Defendants have refused to make payment to Plaintiffs.

95.    As evidenced by the text messages submitted above, Defendants acknowledge the debts that are owed and repeatedly state they are wiring money and even one Defendant stated his father would be wiring the money.

WHEREFORE, Plaintiffs demand judgment against the Defendants individually, jointly, severally and/or in the alternative, for damages in an amount of $3,883,657.00 together with interest, costs of suit and attorney's fees.

## COUNT VI
## Unjust Enrichment

96.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

97.   The Plaintiffs sue the Defendants for goods and luxury items provided to the Defendants upon the promise by the Defendants to pay for said products.  Payment has been demanded and has not been made.

98.   Defendants have been unjustly enriched by retaining control and possession of said goods and luxury items without having paid the fair market value of said items.

WHEREFORE, Plaintiffs demands judgment against the Defendants for damages in an amount of $3,883,657.00, together with interest, costs of suit and attorney's fees.

## COUNT VII
### Amount Owed Upon a Book Account

99.   Plaintiffs reallege and incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

100.  The Plaintiffs sue the Defendants for the reasonable value of the goods and luxury items rendered by the Plaintiffs to the Defendants, upon the promise by the Defendants to make payments for said good and luxury items. After two (2) initial payments were made, Defendants stopped paying on their account.

101.  Plaintiffs have demanded payments, Defendants have promised, in writing, to make said payments and as of this date no more payments have been made.

WHEREFORE, Plaintiffs demand judgment against the Defendants, individually, jointly, severally, and/or in the alternative, for damages in an amount of $3,883,657.00 together with interest, costs of suit and attorney's fees.

**COUNT VIII**
**Civil Theft**

102.   Plaintiffs reallege and incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

103.   As set forth in greater detail above, Defendants made a series of misrepresentations to Plaintiffs, intended to cause Plaintiffs to provide Defendants with possession of merchandise totaling over $4 million dollars on credit with repayment terms.

104.   Defendants made these false and misleading statements with the knowledge that they were false, with malicious intent to deprive Plaintiffs of the value of the merchandise provided to Defendants.

105.   By engaging in such conduct Defendants have effectively engaged in conversion of Plaintiffs' merchandise.

106.   Pursuant to Fla. Stat. § 772.11 Plaintiffs have notified Defendants that Plaintiffs demanded the return of three (3) times the value of the merchandise taken.

107.   To date, Defendants have refused to respond to any demand, have refused to pay Plaintiffs treble damages and have refused to return the unpaid merchandise.

108.   As a result of Defendants' actions Plaintiffs have suffered real and actual damages.

WHEREFORE, Plaintiffs demand judgment against the Defendants, individually, jointly, severally, and/or in the alternative, finding that said Defendants have (i) Engaged in civil theft; (ii) Awarding treble damages pursuant

to Fla. Stat. 772.11, plus attorney fees and costs as a result of said civil theft; and (iii) granting further such relief as this Honorable Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury with respect to all issues so triable.

Dated this **23rd** day of August, 2024.


Respectfully submitted,

**SMITHBRIDGE, LLP**                          **MILLENNIAL LAW, INC.**

BY: *s/Andrew M. Smith*                       BY: *s/Zachary Hyman*
    Andrew M. Smith, Esquire                  Zachary Hyman, Esquire
    FL Bar PHV No: 1048061                   Fla. Bar No. 98581
    *(Pro hac vice*)                         zach@millenniallaw.com
    Andrew@Smithbridgellp.com                jessica@millenniallaw.com
    1878 Route 70, #8                        assistant@millenniallaw.com
    Cherry Hill, NJ 08003                    501 E. Las Olas Blvd
    Tel. 609-410-2830                        Suite 200/314
    Fax 215-646-1047                         Ft. Lauderdale, FL 33301
    *Counsel for Plaintiffs*                 Tel. 954-271-2719
                                             *Counsel for Plaintiffs*